UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTORIA GRETZKY,<br><br>    Plaintiff,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION NO. 1:25-cv-10267-NMG |

**THE DEFENDANT AMGUARD INSURANCE COMPANY'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO LIMIT
DAMAGES UNDER M.G.L. C. 93A, § 9 (LEAVE GRANTED ON JUNE 13, 2025)**

The Defendant AmGUARD Insurance Company ("AmGUARD") respectfully submits this

Reply Memorandum in support of its Motion to Limit Damages Under M.G.L. c. 93A, §9.

**I.     The 1989 Amendment To M.G.L. c. 93A Does Not Apply To Safe Harbor Offers**

In her Opposition to AmGUARD's Motion to Limit Damages, the Plaintiff asserts that

AmGUARD's safe harbor offer, based on a loss of use calculus, is unreasonable because "the

legislature amended M.G.L. c. 93A, §9(3) in 1989 for the express purpose of legislatively

overruling Massachusetts state court opinions that had incorrectly limited those damages subject

to multiplication under c. 93A to loss of use damages[.]" (Plaintiff's Opposition at p. 6) (Internal

quotations omitted). As such, the Plaintiff relies on *Rhodes v. AIG Domestic Claims, Inc.*, 461

Mass. 486 (2012) to assert that "where there is a judgment in the underlying tort suit and the insurer

is determined to have engaged in willful or knowing misconduct, the claimant's damages are not

limited to interest under a loss of use theory." (Plaintiff's Opposition at p. 7).

1

However, this argument is based on a misinterpretation of the 1989 amendment to M.G.L. c. 93A, §9 and displays a fundamental misunderstanding of when it applies. Indeed, the very authority cited by the Plaintiff betrays her own assertions. In *Rhodes*, the SJC held that:

> [u]nder the plain language of the 1989 amendment, if a defendant commits a ***wilful or knowing c. 93A violation*** that finds its roots in an event or a transaction that has given rise to a judgment in favor of the plaintiff, then ***the damages for the c. 93A violation are calculated by multiplying the amount of that judgment***."

*Id.* at 499 (emphasis supplied with bolding and italics). The SJC went on to note that "if judgment has entered, actual damages, shall be taken to be the amount of the judgment ***for the purpose of bad faith multiplication***." *Id*. (Emphasis supplied with bolding and italics). Thus, as can be seen, the 1989 amendment only applies: (1) where there is an underlying judgment; (2) the insurer has been found to have committed a wilful or knowing violation of c. 93A; and (3) for purposes of multiplication of damages.

The 1989 amendment is inapplicable here for several reasons. First and foremost, there has not been a finding that AmGUARD violated M.G.L. c. 93A, much less that it committed a wilful or knowing violation. Without a finding that AmGUARD committed a wilfull or knowing violation of M.G.L. c. 93A/c.176D, the 1989 amendment simply does not come into play. Relatedly, the 1989 amendment concerns the multiplication of damages for wilfull or knowing violations and does not serve as the calculus for a safe harbor offer. This distinction has been recognized by courts. For example, in *Calandro v. Sedgwick Claims Management Services*, 264 F. Supp.3d 321, 324 (D. Mass. 2017), the Court was tasked with determining whether "[t]he meaning of the term 'injury actually suffered' in the safe harbor provision…[has] the same meaning as 'the amount of actual damages' in the 1989 amendment[.]" *Id*. at 324. The Court began its analysis by noting that, with regard to the 1989 amendment, "[t]he statute provides that it is for

2

the purposes of the <u>bad faith multiplication</u> that the amount of the judgment is 'the amount of

actual damages to be multiplied.'" *Id.* (Emphasis in original). As such, the Court found that "[t]he

1989 amendment does not state that this measure of actual damages should be used in the safe

harbor provision." *Id.* With the 1989 amendment inapplicable to the safe harbor analysis, the Court

went on to hold that the "reasonable of the [safe harbor] offer must be judged in relation to 'the

interest lost on the money wrongfully withheld by the insurer, compensating claimants for the

costs and expenses directly resulting from the insurer's conduct.'" *Id. quoting Clegg v. Butler*, 424

Mass. 413, 425 (1997). In other words, loss of use is the correct calculus to determine whether a

safe harbor offer is reasonable and AmGUARD's is reasonable as a matter of law for the reasons

stated in its Memorandum in Support of its Motion to Limit Damages. *See Wahlstrom v. Zurich*

*Am. Ins. Co.*, No. CV 19-12208-LTS, 2022 WL 20416910, at *6 (D. Mass. Nov. 22, 2022) ("The

money wrongfully withheld is the "money that should have been, but was not, offered" by the

insurer to the plaintiff.").

     Additionally, the $2,250,000 consent judgment in the Underlying Action is not the sum off

of which AmGUARD's safe harbor offer is judged because it is an unreasonable amount as a

matter of law. As noted by AmGUARD in its Memorandum in Support of its Motion to Limit

Damages the SJC has previously held that in determining whether a settlement/assignment

agreement (like the consent judgment here) is reasonable, that:

> [b]ecause the consequence of a settlement/assignment agreement is
> that the plaintiff may collect damages only from the insurer, having
> released the insured defendants from personal liability, ***a reasonable***
> ***settlement amount may not exceed the limits of the insured's***
> ***potential insurance coverage, because the plaintiff may recover in***
> ***damages no more than that from the insurer***.

*Com. Ins. Co. v. Szafarowicz*, 483 Mass. 247, 266 (2019) (Emphasis supplied with bolding and

italics). Here, the limits of insurance under the AmGUARD Policy were $1 million which was

paid to the Plaintiff. Because the $1 million was the most that the Plaintiff could recover from AmGUARD in the Underlying Action, this was the proper base off of which to calculate the safe harbor offer and not the $2,250,000 consent judgment which is per se unreasonable. *See id*. at 267 ("[w]here the amount of the judgment arising from the settlement/assignment agreements was greater than $500,000, the limits of the insured's combined mandatory and optional bodily injury coverage, we conclude that the amount obtained through the settlement is per se unreasonable." Thus, AmGUARD based its safe harbor offer on the correct amount – the $1 million policy limit.

**II.     The Relief That The Plaintiff Can Potentially Obtain In This Action Is Limited to What She Demanded In Her M.G.L. c. 93A/c.176D Demand Letter.**

The Plaintiff further contends that the "injury actually suffered" here "includes more than pre-judgment interest" and cites *Urban v. Zurich American Ins. Co.*, 737 F. Supp.3d 39, 45 (D. Mass. 2024) for the proposition that recoverable damages under M.G.L. c. 93A and c. 176D can include "emotional distress" and "fear of financial ruin". From there, the Plaintiff claims that she "suffered substantial mental anguish caused by [AmGUARD's] delay in paying her claims and the unnecessary prolongment of the litigation." (Plaintiff's Opposition at p. 10). Thus, the Plaintiff ostensibly asserts that AmGUARD's safe harbor offer should have included amounts for her alleged mental anguish.

While the Plaintiff is correct that emotional distress damages and damages from fear of financial ruin can be recovered under M.G.L. c. 93A/c.176D, what she ignores is that such damages must be described or demanded in a M.G.L. c. 93A demand letter. It is well established that "Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief. Separate relief on actions not so mentioned is foreclosed as a matter of law." *Clegg*, 424 Mass. at 423.

The plaintiff in *Wahlstrom* made the exact same argument as the Plaintiff and asserted that "her injury is not limited to loss of use because she is also entitled to damages for the financial and emotional costs of being forced to litigate by Defendants' bad faith offers." *Wahlstrom*, 2022 WL 20416910, at *7 (internal quotations omitted). However, the Court noted that:

> Wahlstrom's Second Demand Letter does not anywhere describe or demand compensation for emotional distress damages resulting from the alleged 93A/176D violations. Nor does the letter specifically describe or demand compensation for tort-related expenses; rather, it describes Defendants' alleged acts of bad faith settlement and demands treble the underlying tort judgment minus the amount previously paid by Defendants to Wahlstrom on November 19, 2019, plus attorney's fees[.]

*Id*. at *8. Accordingly, the Court held that:

> [a]s the 93A claimant, Wahlstrom was responsible for defining the parameters of her own demand, and the reasonableness of Defendants' response is judged based on that demand. ***Because she did not raise the issue of emotional distress, tort-related expense, or other similar damages in either her Second Demand Letter or her response to Defendants' post-second letter settlement offer, Defendants were not obligated to include those types of damages in their post-second letter offer***. The Court therefore holds that the ***offer of loss of use damages alone in response to the Second Demand Letter, calculated at a fair interest rate, was reasonable under the circumstances,*** and in light of the complainant's demands.

*Id*. (Emphasis supplied with bolding and italics).

Here, the Plaintiff's August 13, 2024 demand letter does not even mention the words mental anguish, emotional distress or financial ruin let alone seek damages for these alleged injuries. Just like the plaintiff in *Wahlstrom*, the Plaintiff here was responsible for defining her M.G.L. c. 93A demand and the relief sought. Her demand letter focuses solely on what she claims to be AmGUARD's unfair claim settlement practices and omitted any mention of emotional distress or mental anguish. The Plaintiff cannot use her Opposition to rewrite this omission in her demand letter. Indeed, the SJC has held that "[i]t is. . . essential that the complainant define the

injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and enables him to make 'a reasonable tender of settlement.'" *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 288 (1985) (citation omitted); *see also Thorpe v. Mut. of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993) ("Given the failure to specify at least the physical injuries claimed, [claimant's] letter provided no adequate basis for the insurance company to appraise the value of the claim or frame a settlement offer."). Because the Plaintiff did not make even a passing mention of emotional distress or mental anguish in her demand letter, AmGUARD was under no obligation to include any amounts attributable to these belatedly alleged damages as part of its safe harbor offer. Accordingly, AmGUARD's safe harbor offer of loss of use damages was reasonable under the circumstances where the Plaintiff did not seek any emotional distress damages in her demand letter.

### III. AmGUARD's Motion To Limit Damages Is Not Procedurally Defective Or Premature

Lastly, the Plaintiff asserts that AmGUARD "has essentially filed a procedurally defective and unsupported motion for summary judgment seeking judgment in [AmGUARD's favor on an affirmative defense for which [AmGUARD] has the burden of proof." (Plaintiff's Opposition at p. 15). Further, the Plaintiff argues that the Motion to Limit Damages is premature because she has not conducted any discovery yet. Just like the Plaintiff's argument regarding emotional distress damages, this argument has previously been made and rejected by Courts. In *Wahlstrom*, the plaintiff "complain[ed] that [the insurer] should have raised the present issue on its motion for summary judgment." *Wahlstrom*, 2022 WL 20416910, at *4. The Court rejected the plaintiff's argument and held that:

> [t]he Court proceeds to consider the issue now because Wahlstrom has had a full and fair opportunity to present the issue. Not only did she file an opposition to the Motion to Limit Damages, and argue the issue before the Court at a hearing, but the Court also allowed and considered her supplemental briefing and factual submissions. In addition, resolving the safe harbor damages limitation issue now promotes interests of judicial economy as well as clarification of the issues, and the Court determines the issue applying the familiar summary judgment lens drawing all reasonable inferences in Wahlstrom's favor.

*Id.* Likewise, in the present matter, the Plaintiff has had a full and fair opportunity to oppose AmGUARD's Motion. Just like the plaintiff in *Wahlstrom*, the Plaintiff here filed an Opposition setting forth multiple (erroneous) arguments as to why she believes AmGUARD's safe harbor offer is not reasonable. This Opposition, like in *Wahlstrom*, also contained factual submissions attached as exhibits. Furthermore, AmGUARD's Motion to Limit Damages followed the exact procedure set forth in M.G.L. c. 93A, §9(3). More specifically, the statute provides that:

> any person receiving such a [c. 93A] demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant ***may, in any subsequent action, file the written tender and an affidavit concerning its rejection*** and thereby limit any recovery to the relief tendered[.]

M.G.L. c. 93A, §9(3) (emphasis supplied with bolding and italics). Thus, the Motion to Limit Damages is proper under the circumstances.

Additionally, the Motion to Limit Damages is not premature. As noted by the court in in *Wahlstrom*, "resolving the safe harbor damages limitation issue now promotes interests of judicial economy as well as clarification of the issues[.]" *Wahlstrom*, 2022 WL 20416910, at *4. The same is true here. Deciding the Motion to Limit Damages now, during the early stages of the action, will promote judicial economy as it could narrow the scope of the issues in this action. This will allow

the parties (and the court) to save time and resources. As such, for these reasons, the Motion to Limit Damages is proper and ripe for adjudication.

## **CONCLUSION**

For the reasons set forth herein and in AmGUARD's Memorandum of Law in Support of its Motion to Limit Damages, AmGUARD's c. 93A offer was reasonable as a matter of law. AmGUARD is therefore entitled to the benefit of the "safe harbor" provision of M.G.L. c. 93A, §9 limiting its damages to $232,769.16.

The Defendant,

AMGUARD INSURANCE COMPANY,

By its attorneys,

/s/ Lincoln A. Rose
Tamara Smith Holtslag, BBO#634027
Lincoln A. Rose, BBO#691797
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2011
tsmith@peabodyarnold.com
lrose@peabodyarnold.com

Dated: June 17, 2025

## CERTIFICATE OF SERVICE

I, Lincoln A. Rose, hereby certify that I have, on June 17, 2025, served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF). Participants in this case not registered on the ECF system, if any, will receive service through regular first-class mail.

*/s/ Lincoln A. Rose*
Lincoln A. Rose