United States District Court
District of Massachusetts

```
————————————————————————  )
Victoria Gretzky,          )
                           )
          Plaintiff,       )
                           )
     v.                    )      Civil Action No.
                           )      25-10267-NMG
AmGUARD Insurance Company, )
                           )
          Defendant.       )
                           )
                           )
————————————————————————  )
```

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from allegations of unfair and deceptive business practices brought by plaintiff, Victoria Gretzky ("Gretzky" or "plaintiff"), against defendant, AmGUARD Insurance Company ("AmGUARD" or "defendant"). Defendant moves to limit damages. For the reasons that follow, that motion will be allowed.

I.   **Background**

     a. **Facts**

In September, 2021, Gretzky was injured when she fell on a staircase at an apartment building owned by Manual and Madalena Arruda ("the Arrudas"). Gretzky sustained multiple fractures to her legs that resulted in surgery and she was hospitalized for several months. The Arrudas had purchased a liability insurance

policy through AmGUARD which provided coverage for Gretzky's
fall.

In September, 2022, Gretzky filed an action against the
Arrudas in Massachusetts state court to recover her medical
expenses and pain and suffering damages.  AmGUARD made
settlement offers many times before the case went to trial.
Gretzky declined all of those settlement offers and demanded
$1,000,000 in damages, which was AmGUARD's policy limit, plus
interest.  On the second day of trial, the parties settled and a
consent judgement was entered.  It declared that Gretzky was
entitled to $2,250,000 exclusive of interest and costs, and
reserved her right to bring first and third-party bad faith
claims against AmGUARD.  AmGUARD acknowledged responsibility for
paying Gretzky $1,000,000 but the parties dispute whether the
settlement required it to pay pre-judgement interest as well.

On July 8, 2024, Gretzky requested immediate payment of
$1,000,000 plus pre-judgement interest.  One week later, AmGUARD
submitted a check for $1,000,000 with a written note that it was
in "full and final settlement".  Gretzky rejected that check
because the settlement agreement permitted her to pursue bad
faith claims and the check did not include pre-judgement
interest.  On July 31, 2024, AmGUARD sent an identical check to
plaintiff who again rejected it.  On August 8, 2024, AmGUARD

sent a new $1,000,000 check without the written notation that Gretzky accepted.

### b. **Procedural History**

Later in August, 2024, plaintiff sent a demand letter to AmGUARD for relief under M.G.L. c. 93, §9 ("Chapter 93A") and also alleged a violation of M.G.L c. 176D, §3(9)(a)-(d),(f) ("Chapter 176D").  In September, 2024, AmGUARD responded offering plaintiff $232,769, which represented pre-judgment interest at 12% accrued from September 1, 2022, through August 8, 2024.  Plaintiff rejected that proffer.

In November, 2024, plaintiff filed a complaint against AmGUARD in Massachusetts state court, alleging that AmGUARD

> intentionally, knowingly, willfully and repeatedly
> [violated Chapter 93A and Chapter 176D, via] unfair and
> deceptive practices in the business of insurance.

In February, 2025, the action was removed to this Court.

In defendant's answer it denies liability.  In May, 2025, defendant filed a motion to limit damages under Chapter 93A, asserting that the offer of settlement made in response to the demand letter was reasonable and entitles it to the safe harbor provision of Chapter 93A.

Plaintiff opposes the motion, asserting that AmGUARD's settlement offer was unreasonable relative to the actual injury suffered.  Plaintiff claims prejudgment interest is the wrong

measure of economic damages and that damages for mental anguish and unnecessary prolongment of the litigation should have been included in the offer.

## II.  **Legal Standard**

Chapter 176D, Section 3, of the Massachusetts General Laws provides that insurance companies have an obligation to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." M.G.L. c. 176D, §3(9)(f).  Chapter 93A of the Massachusetts General Laws provides the statutory basis for damages when an insurer has violated Chapter 176D.  In cases in which insurers have failed to effectuate prompt and fair settlements,

> recovery shall be in the amount of actual damages; or up to
> three, but not less than two, times such amount

as punitive damages if the violative conduct is willful or knowing.  The punitive damages provision was amended in 1989 to define the "actual damages" to be multiplied as "the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence." R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 754 N.E. 2d 668, 680 (2001).

As relevant to the present motion, Chapter 93A also includes a "safe harbor" provision.  Section 9(3) provides that if a recipient of a demand letter timely tenders a written

settlement offer and that offer is rejected, the recipient may
limit damages when

> the court finds that the relief tendered was reasonable in
> relation to the injury actually suffered by the petitioner.

M.G.L. c. 93A § 9(3).

The reasonableness of an offer is a question for the
factfinder, taking into account all of the attendant facts and
circumstances. Applied Image Reprographics, Inc. v. Citizens
Bank of Mass., 2012 WL 2913528, at *12 (Mass. Super. Ct. June 5,
2012). When plaintiff has no reasonable expectation of proving
an element of her case, however, the question of reasonableness
may be resolved as a matter of law. Wahlstrom v. Zurich Am.
Ins. Co., 2022 WL 20416910, at *4 (D. Mass. Nov. 22, 2022).

## III. **Analysis**

The parties dispute the meaning of "injury actually
suffered," in the safe harbor provision. Defendant contends
that the injury in such cases is the loss of use of the money
wrongfully withheld by the insurer and, therefore, the
reasonableness of the offer should be based on the interest lost
on the money that should have been proffered once liability was
reasonably established. With that understanding, defendant
offered $232,769, which represents interest at the rate of 12%
on the $1 million policy limit, assuming that the $1 million was

payable on September 1, 2022 (the date the underlying tort claim
was filed).

Plaintiff responds that loss of use is not applicable when
there is a judgment in the underlying tort case and the insurer
committed a willful violation of Chapter 176D. She asserts
that, in such cases, the judgment should be multiplied pursuant
to the punitive damages amendment to the statutory scheme. She
also argues that the injury actually suffered includes damages
for emotional distress and the stress of going to trial but she
does not submit what a reasonable offer would have been other
than to suggest it should have been closer to the judgment of
$2,250,000.

### a. **Loss of Interest**

Plaintiff is mistaken about the applicability of loss-of-
use damages. Massachusetts case law indicates that loss of use
is the proper measure of damages, see, e.g., Wahlstrom, 2022 WL
20416910, at *4 (collecting cases), and plaintiff cites no
authority to the contrary. The single case she relies on,
Rhodes v. AIG Domestic Claims, Inc., is factually
distinguishable. First, the $7 million offer in that case was
to settle both the judgment of the underlying tort suit
(approximately $11 million, which had not yet to be paid) and
the Chapter 93A claim. Second, although perhaps the $7 million
offer could have satisfied the safe harbor provision, none of

the courts in the litigation analyzed the offer in that regard.
Third, at the time the $7 million was offered, a judge had
already found the defendant liable for willful and knowing
violations of Chapter 93A, enabling an award of punitive
damages.

Rhodes is inapposite to this case because (1) AmGUARD's
offer was to settle the Chapter 93A claim only because the
underlying tort action had already been settled; (2) Rhodes did
not involve the safe harbor provision of the statute on which
this case indisputably turns; and (3) there has been no judicial
finding of a willful and knowing violation of Chapter 93A.  The
loss of use of wrongfully withheld settlement funds is the
proper standard that this Court will use to determine whether
AmGUARD's offer was reasonable.

Having determined that loss of use is the proper measure of
damages under Section 176D, the ultimate question is what was
that loss here?

### i. **Prejudgment Violations**

Beginning with the prejudgment violation, plaintiff does
not and cannot argue that AmGUARD was obligated to settle for
more than the $1 million policy limit.  That is the maximum
amount plaintiff could have expected to receive.  Thus, with
respect to prejudgment violations, plaintiff was deprived of use
of $1 million, and her damages are the interest accrued on that

amount. Defendant's settlement offer was precisely that amount and was therefore reasonable relative to the prejudgment injuries.

### ii. **Post-Judgment Violations**

As for post-judgment violations, plaintiff argues that after the parties entered their consent judgment, defendant became obligated, pursuant to the terms of the settlement, to pay prejudgment interest on the $1 million, i.e. $232,769. Thus, defendant is alleged to have wrongfully withheld the payment of interest and therefore owes interest on the interest which defendant did not include in its offer.

Whether defendant was required to pay prejudgment interest as part of the consent judgment is a question of fact that the Court will not determine at this stage. Assuming, arguendo, that the consent judgment did in fact mandate payment of the prejudgment interest, the settlement offer was reasonable relative to the injury suffered. The two-month withholding of the prejudgment interest resulted in less than $5,000 in loss-of-use damages, a de minimis amount compared to the amount offered to plaintiffs, and therefore the September 12 settlement offer was reasonable as a matter of law.

### b. **Other Injury**

Finally, plaintiff contends that the Chapter 93A settlement offer was unreasonable because it did not include any damages

for emotional distress.  Plaintiff is correct that a Chapter 93A
settlement may include more than just loss of use of wrongfully
withheld funds.  Other damages include emotional distress for
the fear of financial ruin and the hassle of litigation. Urban
v. Zurich Am. Ins. Co., 737 F. Supp. 3d 39, 46 (D. Mass. 2024).
Yet, in this case, plaintiff did not include a request for such
damages in her demand letter.  Not having been apprised of
plaintiff's alleged injuries outside of loss of use, defendant
cannot be expected to have included compensation for such
damages in its offer.  See Wahlstrom, 2022 WL 20416910, at *8.

### ORDER

For the foregoing reasons, the Motion to Limit Damages
(Docket No. 19) is **ALLOWED**.

**So ordered**.

Nathaniel M. Gorton
Senior United States District Judge


Dated:  November 10, 2025